UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| HAIER US APPLIANCE SOLUTIONS, INC., | ) | |
| *d/b/a*, GE APPLIANCES, | ) | |
| | ) | |
| *Plaintiff,* | ) | 1:24-cv-375 |
| | ) | |
| v. | ) | Judge Curtis L. Collier |
| | ) | Magistrate Judge Michael J. Dumitru |
| EMJ CORPORATION, | ) | |
| | ) | |
| *Defendant.* | ) | |

**M E M O R A N D U M**

Before the Court is a motion by Defendant, EMJ Corporation, to transfer venue to the

Northern District of Florida under 28 U.S.C. § 1404(a).  (Doc. 20.)  Plaintiff, Haier US Appliance

Solutions, Inc., doing business as GE Appliances, filed a response in opposition (Doc. 22), and

Defendant replied.  (Doc. 23.)  Also before the Court is Plaintiff's motion for leave to amend its

complaint.  (Doc. 21.)  Defendant has filed a response in opposition.  (Doc. 24.)  These issues are

now ripe for review.

I.    **BACKGROUND**

Defendant is a construction company with its principal place of business in Chattanooga,

Tennessee.  (Doc. 1 ¶ 3.)  Plaintiff is a Delaware corporation with its principal place of business

in Louisville, Kentucky.  (*Id*. ¶ 2.)  This action arises out of Defendant's alleged failure to pay

Plaintiff for goods and services Plaintiff provided in relation to a senior living facility in

Watersound, Walton County, Florida.  (*Id*. ¶ 1.)

Around 2021, Defendant began construction to improve a senior living facility known as

Watermark at Watersound Senior Living (the "Florida Project").  (Doc. 1-1.)  On or around May

11, 2021, Defendant and Plaintiff entered into a purchase order agreement ("Purchase Order

Agreement" or "Agreement"), in which Plaintiff agreed to furnish residential appliances for Watermark. (*Id.*) Plaintiff agreed to furnish all labor, materials, equipment, services, superintendence, and other items required to install the appliances. (*Id.* at 26.) In return, Defendant agreed to pay Plaintiff. (Doc. 1 ¶ 14.) As relevant here, the Purchase Order Agreement provides the following term regarding disputes in section 23:

> If a dispute arises out of or relates to this Purchase Order, the Parties shall endeavor to settle the dispute through direct discussion. In the absolute discretion of Purchaser, disputes between the Purchaser and Supplier not resolved by direct discussion may be submitted to mediation. . . . If neither direct discussions nor mediation successfully resolve the dispute, the Parties agree that Purchaser, in its absolute discretion, shall determine to resolve the dispute through either arbitration . . . or by litigation in either the state or federal court having jurisdiction of the matter in the location of the Project . . . . **The venue of any binding dispute resolution procedure shall be the location of the Project, unless the Parties agree on a mutually convenient location**.

(Doc. 1-1 at 6–7 (emphasis added).)

Subsequently, on May 20, 2021, the parties signed a rider contract ("Rider Agreement") to the Purchase Order Agreement. (Doc. 21-1 at 37–38.) According to the Rider Agreement, "The laws of the State of Delaware will govern the performance and interpretation of this agreement. All disputes, **except collection matters**, shall be settled by Arbitration . . . ." (*Id.* at 38 (emphasis added).) The Rider Agreement contains the following integration clause:

> Notwithstanding any language in the purchase order, or any other document found to make up part of the agreement between Buyer and [Plaintiff] regarding the above-referenced project (collectively "Purchase Order"), **the parties intend to amend the terms of the Purchase Order to conform to the following items, which will supersede all corresponding subject matter appearing anywhere in the Purchase Order.**

(*Id.* at 37 (emphasis added).)

2

On November 26, 2024, over three years after the signing of these agreements, Plaintiff filed a complaint against Defendant, alleging three causes of action: (1) breach of contract; (2) unjust enrichment; and (3) account stated.  (Doc. 1 at 3–5.)  According to Plaintiff, although Plaintiff performed all obligations required of it under the Agreement, Defendant failed to fulfill its payment terms under the Agreement.  (*Id.* ¶¶ 11–12.)  Plaintiff represents that it "conferred with Defendant numerous times regarding the outstanding invoices" and "made repeated demands for payment."  (*Id.* ¶¶ 13–14.)  Plaintiff further claims that Defendant has not paid Plaintiff for the goods and services under the Agreement (*id.* ¶ 15), and the total unpaid principal balance for the goods is $377,764.39 (*id.* ¶ 19).

On January 10, 2025, Defendant answered the complaint.  (Doc. 18.)  On January 22, 2025, Defendant filed a motion to transfer venue to the Northern District of Florida based on the forum-selection clause in the Purchase Order Agreement.  (Doc. 20.)  On February 3, 2025, Plaintiff filed a response in opposition to Defendant's motion to transfer venue (Doc. 22) and a motion for leave to amend its complaint to assert additional claims against Defendant and a claim against a new defendant, Western Surety Company (Doc. 21).

Plaintiff's new, proposed claims revolve around a different project related to an apartment complex in Colorado Springs, Colorado (the "Colorado Project"), where Defendant allegedly failed to fulfill its payment obligations under a different contract.  (Docs. 21 ¶ 7, 21-1 ¶ 11.)  The contracts that govern the Florida and Colorado Projects are virtually identical.  As with the contract that governs the Florida Project, Defendant and Plaintiff entered into a purchase order agreement for the Colorado Project which provided, "[t]he venue of any binding dispute resolution procedure

shall be the location of the Project, unless the Parties agree on a mutually convenient location."

(Doc. 21-1 at 50–54.)  The motions are now ripe for review.

## II.    STANDARDS OF REVIEW

### A.    Transfer of Venue

The transfer statute exists "to prevent the waste of time, energy[,] and money and to protect

litigants, witnesses[,] and the public against unnecessary inconvenience and expense."  *Lalewicz*

*v. WarnerMedia Direct, LLC*, No. 4:24-CV-44, 2024 WL 3640409, at *2 (E.D. Tenn. July 24,

2024) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).  Pursuant to 28 U.S.C. § 1404(a),

"[f]or the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought or to

any district or division to which all parties have consented."

Section 1404(a) "permits transfer to any district where venue is also proper (i.e., 'where

[the case] might have been brought') or to any other district to which the parties have agreed by

contract or stipulation."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S.

49, 59 (2013).  Generally, the district court has broad discretion in considering a motion to transfer

under § 1404(a).  *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).  However, when

a valid and enforceable forum-selection clause exist, the clause must be "given controlling weight

in all but the most exceptional cases."  *Alt. Marine Constr. Co.*, 571 U.S. at 59–60 (citations and

quotations omitted).   A motion to transfer is appropriate where the forum-selection clause

designates another court "within the federal court system."  *Boling v. Prospect Funding Holdings,*

*LLC*, 771 F. App'x 562, 567 (6th Cir. 2019).

B.    **Amended Complaint**

Federal Rule of Civil Procedure 15 governs motions to amend pleadings.  Because this motion to amend is outside of the window for amendment as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), Plaintiff "may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

"The court should freely give leave when justice so requires." *Id.*  The grant or denial of a motion to amend under Fed. R. Civ. P. 15(a) is within the discretion of the trial court and leave to amend a complaint should be liberally granted. *Foman v. Davis,* 371 U.S. 178, 182 (1962). "In deciding whether to grant a motion to amend, courts should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Brumbalough v. Camelot Care Ctrs., Inc.,* 427 F.3d 996, 1001 (6th Cir. 2005); *see also Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003). "The standard for a motion to amend is governed by the general principle that 'cases should be tried on their merits rather than the technicalities of pleadings.'" *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 732–33 (6th Cir. 2019) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)).

III.    **DISCUSSION**

The Court will first address whether the forum-selection clause applies to this dispute and whether its enforcement supports transfer of venue.  Next, the Court will address Plaintiff's alternative argument that even if the forum-selection clause applies, public policy disfavors transfer of venue.  Because this argument depends to some degree on Plaintiff's proposed amended

complaint (Doc. 21-1), the Court will first determine whether justice requires the Court to grant Plaintiff leave to amend its complaint.

### A.    Whether this Dispute Falls Under the Forum-Selection Clause

In deciding whether the forum-selection clause in the Purchase Order Agreement applies to this dispute, the Court must preliminarily determine which state's law applies when interpreting the contracts.  "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits."  *Atl. Marine Constr. Co.*, 571 U.S. at 65 (citation omitted).  "In contract cases where the parties have selected a state's law to apply to their transaction, Tennessee will honor that choice-of-law provision 'so long as the provision was executed in good faith, there is a material connection between the law and the transaction, and the chosen law is not contrary to the fundamental policies of Tennessee.'"  *Muhammad v. Deutsche Bank Nat'l Tr. Co*., No. 21-6243, 2023 WL 3067756, at *2 (6th Cir. Apr. 25, 2023) (quoting *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645-46 (6th Cir. 2013)).

Here, a choice-of-law provision exists in the Rider Agreement which states, "The laws of the State of Delaware will govern the performance and interpretation of this agreement."  (Doc. 21-1 at 38.)  Plaintiff is a Delaware corporation governed by Delaware law.  (Doc. 1 ¶ 2.)  Because Delaware has a substantial relationship to the parties and there is no indication of bad faith or subterfuge, the choice-of-law provision should apply.  *See Muhammad,* WL 3067756, at *2. Accordingly, the Court will apply Delaware law when interpreting the parties' contracts.  *See Fixero, Inc. v. Fixero Group Limited*, 99 F.4th 304, 326-27 (2024).

Under Delaware law, the role of a court is to effectuate the parties' intent when interpreting a contract.  *Fairstead Cap. Mgmt. LLC v. Blodgett*, 288 A.3d 729, 759 (Del. Ch. 2003) (quoting

*Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006)).  A court is to "fulfill the parties' shared expectations at the time they contracted."  *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 696 (Del. 2019) (internal quotations omitted).  Courts start with the text of the contract and give effect to the plain and ordinary meaning of the contract's terms and provisions.  *Sunline Com. Carriers, Inc. v. CITGO Petroleum Corp.*, 206 A.3d 836, 846 (Del. 2019).   "The contract is to be read as a whole, giving effect to each term and provision, 'so as not to render any part of the contract mere surplusage.'"  *Centene Corp. v. Accellion, Inc.*, No. CV 2021-0206-PAF, 2022 WL 898206, at *5 (Del. Ch. Mar. 28, 2022) (citation omitted).

The Delaware Supreme Court has held that "where contracting parties have expressly agreed upon a legally enforceable forum selection clause, a court should honor the parties' contract and enforce the clause."  *Ingres Corp. v. CA, Inc.,* 8 A.3d 1143, 1146 (Del. 2010).  Such clauses "are presumptively valid and should be specifically enforced unless the resisting party '[] clearly show[s] that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud and overreaching."  *Id.* (citation omitted).

The Purchase Order Agreement provides the following term regarding disputes: "The venue of any binding dispute resolution procedure **shall be the location of the Project**, unless the Parties agree on a mutually convenient location."  (Doc. 1-1 at 6–7 (emphasis added).)  Relying on the language of the Purchase Order Agreement, Defendant argues the Court should give controlling weight to the forum-selection clause in which the parties "specifically bargained for and expressly agreed" to, thus transferring venue to the Northern District of Florida, the location of the project.  (Doc. 20 at 3.)

In response, Plaintiff relies on the integration clause in the subsequent Rider Agreement to attempt to avoid the forum-selection clause in the Purchase Order Agreement. (Doc. 22 at 4–7.) The Rider Agreement provides:

> Notwithstanding any language in the purchase order, its exhibits, or any other document found to make up part of the agreement between Buyer and [Plaintiff] regarding the above-referenced project (collectively "Purchase Order"), **the parties intend to amend the terms of the Purchase Order to conform to the following items, which will supersede all corresponding subject matter appearing anywhere in the Purchase Order**. . . The laws of the State of Delaware will govern the performance and interpretation of this agreement. All disputes, **except collection matters**, shall be settled by Arbitration . . . .

(Doc. 21-1 at 37–38 (emphasis added).) Plaintiff argues the Rider Agreement "supersedes" or "wholly replaces" the Purchase Order Agreement because the Rider Agreement governs the same subject matter: "dispute resolution procedure and forum selection." (Doc. 22 at 6.) Accordingly, Plaintiff suggests that because its claims are "collection matters," no forum-selection clause governs this dispute. (*Id.*)

In its reply, Defendant argues,

> [I]t simply does not track that the integration clause contained with the rider to the Agreements would cause the [] language to supersede the forum selection clause, as they are not in conflict. Indeed, while one provision of the Agreement dictates selection of forum (i.e. the location of the project) the rest of the Agreement is silent as to the forum in the context of collection actions. In fact, collection matters were unambiguously excluded from the scope of this alternate dispute resolution language – leaving collection matters subject to the forum selection clause.

(Doc. 23 at 3.)

The Court agrees with Defendant. The two contracts do not govern identical subject matter. The Purchase Order Agreement governs dispute resolution procedure and forum selection for *any* binding dispute, while the Rider Agreement governs only non-collection matters. Unlike

the prior Purchase Order Agreement, the subsequent and integrated Rider Agreement is silent as to the choice of forum for collection matters.

Under Delaware law, "[t]here is no *per se* rule that a forum selection clause in a prior agreement is superseded by a subsequent, integrated agreement that is silent as to a choice of forum." *Centene Corp.*, 2022 WL 898206, at *9. "[A] party c[an]not avoid a forum selection provision in one contract merely because the other agreement, which did not possess a forum selection clause, contained an integration clause." *Id.* at *10 (citing *Fl. Chem. Co., LLC v. Flotek Indus., Inc.*, 262 A.3d 1066 (Del. Ch. 2021)).

The parties negotiated the contracts and unambiguously excluded collection matters from the scope of the Rider Agreement. The Court "seriously doubts" that by remaining silent on the choice of forum for collection matters two sophisticated parties intended "that the parties could file suit wherever they might be able to obtain personal jurisdiction over the other party." *Id.* at *11. The Court finds the "forum selection provision in the more 'fundamental' agreement applie[s] to [the] ancillary agreement that d[oes] not contain a forum selection provision" for collection matters. *Id.* at *10. Because Plaintiff has not shown the enforcement of the forum-selection clause would be unreasonable or unjust and the parties do not dispute validity, the Court will enforce the forum-selection clause here. *See Mack v. Rev. Worldwide, Inc.*, No. CV-2019-0123-MTZ, 2020 WL 7774604, at *6 (Del. Ch. Dec. 30, 2020).

### B.    Whether Public Policy Bars Transfer

The Court will now address Plaintiff's alternative argument that public policy disfavors transfer of venue. (Doc. 22 at 7–8.) Plaintiff argues,

> In the alternative, even if the Court finds that the Purchase Order Clause in the [Florida] Agreement does apply to the dispute, [Plaintiff] has moved for leave to

> amend its Complaint to assert additional, related claims against [Defendant] and Western Surety arising out of the [Colorado] Agreement. If the Court grants [Plaintiff] leave to amend, the Purchase Order Clause in the [Colorado] Agreement conflicts with the Purchase Order Clause in the [Florida] Agreement. In the presence of two competing forum selection clauses, the Eastern District of Tennessee should retain jurisdiction over this matter in the interest of judicial economy and the balance of relevant public and private interests.

(*Id*. at 4.)

In making this argument, Plaintiff assumes the Court will grant its motion to amend the complaint (Doc. 21), which seeks to assert additional claims against Defendant and a claim against Western Surety Company for the alleged failure to pay for goods and services provided in a separate, unrelated project in Colorado Springs, Colorado. (Doc. 21-1 ¶ 11.)

The contracts that govern the Florida and Colorado projects are virtually identical. As with the contract that governs the Florida Project, Defendant and Plaintiff entered into a purchase order agreement for the Colorado Project which provided, "[t]he venue of any binding dispute resolution procedure shall be the location of the Project, unless the Parties agree on a mutually convenient location." (*Id*. at 50–54.)

By assuming the Court will grant its proposed amended complaint (Doc. 21), which alleges facts regarding two separate contractual projects with conflicting forum-selection clauses, Plaintiff argues this Court should retain jurisdiction because public policy disfavors enforcement of competing forum-selection clauses. (Doc. 22 at 7.) Because Plaintiff's argument against transfer of venue depends in large part on its motion to amend the complaint, the Court must address the motion to amend first.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that the Court "should freely give leave [to amend] when justice so requires." "The grant or denial of leave to amend is within

the discretion of the trial court, and review is for abuse of discretion." *Sec. Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1008 (6th Cir. 1995) (citing *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983)).

The timing of the motion to amend coupled with Plaintiff's arguments against transfer of venue lead the Court to believe the primary purpose of the amendment is to defeat the parties' bargained-for choice of forums.   Forum-selection clauses are an integral part of the benefit of the parties' bargain, and as sophisticated commercial enterprises, the parties were surely aware of the implications of the forum-selection clauses when they entered into the contracts. *See Atl. Marine Constr. Co.*, 571 U.S. at 66.  "In all but the most unusual cases . . . 'the interest of justice' is served by holding parties to their bargain." *Id.*  Justice does not require the Court to disregard the parties' bargain and allow Plaintiff to avoid its contractual obligations by amending its complaint. *See* Fed. R. Civ. P. 15(a)(2).

Furthermore, as opposed to the potential harm that would result from disregarding the parties' contractual agreements, "little prejudice will result to Plaintiff by requiring [it] to file a separate new complaint regarding the distinct [Colorado Project] rather than appending the new claims to this case." *See Dyess v. Mullins*, No. 1:16-CV-910, 2017 WL 3838642, at *3 (S.D. Ohio Sept. 1, 2017).  The amended complaint seeks to assert new claims arising from a wholly unrelated project. *See Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001) (district court did not abuse discretion in denying amendment to allege new, unrelated claims).  Therefore, the Court will **DENY** the motion to amend the complaint.   (Doc. 21.)   Accordingly, there are no competing forum-selection clauses and transfer is appropriate.

Even assuming for the sake of argument that the Court granted Plaintiff's motion to amend the complaint, transfer of venue would still be appropriate. "Only under extraordinary circumstances unrelated to the convenience of the parties" should a court decline to enforce a forum-selection clause. *Atl. Marine Constr. Co.*, 571 U.S. at 62–63. Ordinarily, when considering a motion under § 1404(a), "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* at 63. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum." *Id.* (internal quotation marks omitted).

A "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)). When parties are subject to a forum-selection clause, they "waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 64. The court may thus consider arguments only about the public-interest factors, although those factors "rarely defeat a transfer motion." *Id.*

In this case, Plaintiff has failed to show that any public-interest factors "overwhelmingly disfavor a transfer." *See id.* at 67. To the contrary, public interest favors transfer because "the public has a strong interest in applying contracts as they are written" and holding parties to their bargain. *See Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 513 (N.D. Ohio 2022) (citations omitted).

As Plaintiff notes, courts do sometimes decline to enforce multiple competing forum-selection clauses where it "would lead to parallel proceedings involving the same issues in

at least two different venues that could result in conflicting judgments." *Fed. Mach. & Equip. Co. v. Tousey*, No. 1:21-CV-01422, 2022 WL 615032, at *3 (N.D. Ohio Mar. 2, 2022). Yet contrary to Plaintiff's assertion, courts do not disregard the competing clauses by designating a new forum altogether. Instead, courts enforce the forum-selection clause in one of the agreements. *Boling*, 771 F. App'x at 562 (citations omitted).

Here, the parties negotiated and agreed to set the forum in the location of the projects, Florida and Colorado respectively. The Court would be required to enforce either forum-selection clause rather than disregarding both. *See Atl. Marine Constr. Co.*, 571 U.S. at 66. Retaining the case in the Eastern District of Tennessee based on Plaintiff's preferred venue would be contrary to both forum-selection clauses and would only "unnecessarily disrupt the parties' settled expectations." *See id.* Therefore, the Court would still have granted the motion to transfer.

For these reasons, transfer of venue to the Northern District of Florida is appropriate. The Court will **GRANT** Defendant's motion. (Doc. 20.)

IV.    <u>**CONCLUSION**</u>

Accordingly, Plaintiff's motion to amend the complaint (Doc. 21) will be **DENIED**. Defendant's motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Doc. 20) will be **GRANTED** and the Court will **TRANSFER** the case to the Northern District of Florida.

**AN ORDER SHALL ENTER.**

/s/ _____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**